383 S.E.2d 815

**STATE of West Virginia**

v.

**David PREECE.**

**No. 18564.**

Supreme Court of Appeals of West Virginia.

July 14, 1989.

Mark William McOwen, Huntington, for Preece.

Brenda Craig Ellis, Asst. Atty. Gen., Charleston, for State.

McHUGH, Justice:

This case is before the Court upon the appeal of David Preece from the Wayne County Circuit Court's denial of his motion for a new trial following his conviction for the felony offense of driving under the influence of alcohol which is a contributing cause of a fatality, pursuant to *W. Va. Code*, 17C–5–2(a) [1986]. He was sentenced to serve one to three years in the penitentiary.[1] The issue before the Court in this case is whether a police officer who is investigating a traffic incident is required to provide *Miranda*[2] warnings to persons

---

1. *W. Va. Code*, 17C–5–2(a) [1986] contains the felony offense of driving while intoxicated and causing a fatality.

   The State must prove that the driver was under the influence of alcohol, or had a blood alcohol level of .10%; and that, with reckless disregard, the driver committed a driving offense, or failed to perform a legal duty, that resulted in a fatality; and that the alcohol contributed to the fatality.

   In this case, the jury was instructed on the felony offense, the lesser included misdemeanor offense (*Code*, 17C–5–2(b) [1986]), and driving under the influence (*Code*, 17C–5–2(d) [1986]) of alcohol.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

at the scene of the investigation prior to questioning them. We affirm.

## I

Between 1:00 a.m. and 2:00 a.m. on April 12, 1986, there was a two-car accident involving a white sedan (with a sunroof) and a blue hatchback on a two-lane road, Route 52, in Wayne County, West Virginia. The blue hatchback was moving slowly in the northbound lane. Immediately after an explosive accident with the southbound white sedan, the blue hatchback stopped perpendicular to the northbound lane in which it was travelling. The southbound white sedan continued moving, causing motorists behind the blue hatchback in the northbound lane to swerve in order to avoid additional accidents.[3] The originally southbound white sedan came to a stop in a ditch to the right of the northbound lane, and was pointed in a northerly direction.[4]

Several motorists stopped and offered assistance. The driver of the blue hatchback was already dead (from massive internal bleeding). Some motorists approached the white hatchback and smelled alcohol. Two men were in the white sedan. One man was partially on the floor of the front passenger's seat. The other man, identified by the motorists as the appellant, was in the driver's seat with his feet stuck under the passenger's side dashboard. The appellant conversed with the motorists and informed them that he was "alright."

While one motorist called the fire department, others attempted to locate tools to assist the men in the white sedan who appeared to be unable to exit the car.

Within three to four minutes, emergency medical technicians (EMTs) and firemen arrived.

The man on the passenger's side of the white sedan had left the scene of the accident.

When the sheriff and his deputy arrived, the deputy approached the white sedan. EMTs were assisting the appellant, whose only injury was the cut on his head. At that time, the appellant remained in the driver's seat with his feet under the passenger's side dashboard. The deputy also smelled alcohol in the sedan. While the EMTs and firemen were using the "jaws of life" to remove the appellant from the sedan, the deputy investigated the accident. He drew accident sketches, took photographs and took statements from the motorists who were travelling northbound behind the blue hatchback. The motorists told the deputy of the additional occupant of the white sedan who had left the scene of the accident. The EMTs, however, told the deputy that it would have been impossible to exit the sedan, given its wrecked condition in the ditch.

After twenty minutes had passed, the EMTs had removed the appellant, placed him on a stretcher and put him in an ambulance. The deputy and the sheriff approached the ambulance to talk with the appellant.[5]

Without first providing the appellant with a *Miranda* warning, the deputy asked the appellant if he was driving the vehicle.

**3.** No one could identify the driver of the white sedan while it was moving.

**4.** These facts were recited to the jury by the motorists behind the blue hatchback. Due to the explosion, no one saw the precise point of impact. The trial court ruled that the police officers who investigated the accident were not qualified in the area of accident reconstruction so as to allow them to testify to the cause of the accident. However, based upon the testimony of the motorists, the jury (which was also instructed that "circumstantial evidence, standing alone, will not support a verdict of guilty unless the fact of guilt is proven to the exclusion of every reasonable hypothesis of innocence") could conclude that the driver of the white

sedan crossed the center line of the road in reckless disregard of a traffic law, as set forth in *Code*, 17C–5–2(a)(2)–17C–5–2(a)(3) [1986]. *See* syl. pt. 1, *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978). *See also State v. Bartlett*, 177 W.Va. 663, 668, 355 S.E.2d 913, 918 (1987) (eyewitness testimony concerning estimated speed of vehicle was sufficient to establish appellant's conviction under *Code*, 17C–5–2(a)).

**5.** There is no evidence in the record concerning whether the EMTs were in the ambulance when the deputy and sheriff approached the appellant, or whether the ambulance doors were closed to the numerous persons at the accident scene.

The appellant responded that he was driving. The deputy then asked him what happened. The appellant responded that the blue hatchback "came acrossed [sic] the road and hit me." The deputy asked the appellant where he had been. The appellant responded, "you want the truth?" When the deputy answered affirmatively, the appellant admitted that he had been at a bar and "had been drinking."

Approximately three hours after the accident, a blood alcohol test was performed.[6] At that time, appellant's blood alcohol level was .24.

Sometime shortly thereafter the appellant told the deputy that he was not driving the car, but that his friend, Mike Stepp, with whom he had been drinking that evening, was driving the car.

The appellant was not formally arrested or taken into custody.[7] Within one month of the accident, the appellant was indicted by the grand jury after additional investigation.

Prior to trial the appellant moved to suppress the statements he made in the ambulance because the deputy did not provide the appellant with *Miranda* warnings before questioning him. The deputy was the only witness at the suppression hearing. He testified that when he arrived at the scene of the accident, he routinely investigated it. He was not sure how the accident occurred and had received conflicting reports as to whether there could have been another person in the white sedan: "I didn't know who was telling me what.... I was trying to determine who was driving the car."[8]

The trial court ruled that the initial question (whether the appellant was the driver of the white sedan) was admissible because it was a routine question asked by the deputy when he arrived at the scene of the automobile accident; therefore, the deputy was not required to provide the appellant with *Miranda* warnings prior to asking the question.[9] However, the trial court suppressed all subsequent statements because it found that once the appellant replied that

6. The test results were admitted without objection and are not an issue before this Court. Prior to the test being administered, the appellant wrote that he authorized the test and understood that he was not under arrest. The authorization was witnessed by a nurse and the deputy. *W.Va.Code,* 17C–5–4 [1983], our "implied consent" statute, permits a police officer to perform a breath analysis upon "reasonable cause" to believe a person has violated any provision of *Code,* 17C–5–2 [1986]. However, a secondary blood, breath or urine test may only be performed "incidental to a lawful arrest." *Code,* 17C–5–4 [1983]. *Code,* 17C–19–3(a) [1984] requires an initial appearance before a magistrate immediately after arrest unless good cause for noncompliance, such as medical treatment, is established. Syl. pts. 4 and 5, *State v. Byers,* 159 W.Va. 596, 224 S.E.2d 726 (1976). In *State v. Shugars,* 180 W.Va. 280, 283, 376 S.E.2d 174, 177 (1988), a police officer investigated a fatal accident site. He saw alcohol in one of the vehicles and went to the hospital and informed the driver of the vehicle (who had alcohol on his breath) that he was "being charged." He obtained a consent form for a blood alcohol test. However, the appellant was not placed under arrest until four days later. We concluded, for purposes of the fourth amendment, that when the deputy arrived at the hospital and talked to the appellant, he effectuated a lawful warrantless arrest; therefore, the test results were admissible evidence.

7. Formal arrest occurs when an officer informs a suspect that he is under arrest. *Berkemer v. McCarty,* 468 U.S. 420, 441, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 335 (1984). *See Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977).

8. The sheriff testified before the jury that he believed probable cause to arrest the appellant existed *after* the appellant answered the questions. However, he did not arrest him because he was under the belief that once arrested the county would be liable for the appellant's hospital bill.

9. The trial court was not clearly wrong when it also found, at the *in camera* hearing, that under the totality of the circumstances, the State had proven by a preponderance of the evidence that the response was voluntary, and not the result of the appellant's alcohol-induced diminished capacity, based upon the testimony of the deputy (which was the only form of evidence offered at the suppression hearing). *See* syl. pt. 1, *State v. Hall,* 174 W.Va. 599, 328 S.E.2d 206 (1985); syl. pt. 3, *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978). *Cf. State v. Persinger,* 169 W.Va. 121, 139, 286 S.E.2d 261, 272 (1982) (distinguishing between voluntariness, due to diminished capacity, and voluntariness for purposes of *Miranda* ).

he was the driver of the car, the deputy had probable cause to arrest him and was therefore required to advise him of his *Miranda* rights prior to any additional questioning.[10]

The appellant testified before the jury that he had consumed approximately a case of beer between midafternoon and the late evening hours prior to the accident; that, however, he had relinquished his keys to Mike Stepp much earlier in the evening and that Stepp was driving when the accident occurred. The appellant testified that immediately following the accident, Stepp pulled him from the passenger's side to the driver's side of the car and exited. He then testified that he did not recall the accident or anything that occurred immediately following it.[11]

Stepp testified and denied being in the car when the accident occurred.

Mutual friends of Stepp and the appellant established that the two were with them in a bar and both were missing during the time the accident occurred. Stepp reappeared, unmarked, and asked for a ride. He then informed the group not to use Route 52 because there was an accident on the road. He also stated that he would never drink and drive again.[12]

The jury returned a guilty verdict for the felony offense.

## II

The appellant contends that the trial court erred when it concluded that the deputy was not required to provide him *Miranda* warnings before asking the appellant if he was driving the white sedan.

The *Miranda* ruling resulted from the growing concern of the Supreme Court of the United States over the voluntariness of statements provided by a suspect who is (1) in custody and (2) interrogated.[13] In order to temper the accusatory and coercive atmosphere of such interrogations and to provide some minimal assurance to the courts that the statement which is subsequently offered in a criminal proceeding against the suspect was voluntarily given, the court required the police [14] to inform a custodially detained suspect, of his constitutional rights under the fifth and sixth amendments to the *Constitution of the United States* before attempting to interrogate him.

The warnings that must be provided occur when "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966).[15] The ruling was intended to apply

---

**10.** Since the appellant received a favorable ruling on the motion to suppress the additional statements, the ruling and legal standard employed to reach the ruling are not before us.

**11.** The trial court ruled at the suppression hearing that the statements were also voluntary and not the result of appellant's diminished capacity due to intoxication. *See supra* note 9. Although the appellant testified before the jury that he drank a substantial amount of alcohol and did not remember being questioned by the officer, the appellant did not offer an instruction on the voluntariness of the statements, for the jury's consideration. *See* syl. pt. 2, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978); *accord*, syl. pt. 3, *State v. Sparks*, 171 W.Va. 320, 298 S.E.2d 857 (1982); syl. pt. 2, *State v. Goodmon*, 170 W.Va. 123, 290 S.E.2d 260 (1981).

**12.** The appellant contends that there was insufficient evidence to prove that he was driving the white sedan. The identity of the driver hinged on witness credibility and circumstantial evidence concerning the appellant's position in the car immediately after the accident; therefore,

the issue was properly left to the jury. *State v. McPherson*, 179 W.Va. 612, 616–17, 371 S.E.2d 333, 337–38 (1988).

**13.** The appellant was "interrogated" for purposes of *Miranda;* therefore, the sole issue before the Court is whether the appellant was in custody at the time he was interrogated. For a discussion of interrogation for purposes of *Miranda,* see *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

**14.** In syllabus point 2 of *State v. Muegge*, 178 W.Va. 439, 360 S.E.2d 216 (1987), we also required *Miranda* warnings for individuals who are custodially interrogated by private security guards acting pursuant to statutory authority.

**15.** For purposes of determining "custody" concerning sixth amendment rights, the court initially focused upon when the officer had probable cause to arrest. *Escobedo v. Illinois*, 378 U.S. 478, 492, 84 S.Ct. 1758, 1766, 12 L.Ed.2d 977, 987 (1964); however, in *Miranda*, 384 U.S. at 444 n. 4, 86 S.Ct. at 1612 n. 4, 16 L.Ed.2d at

only when the suspect was interrogated in a custodial atmosphere, as it is in this situation that the suspect will be induced "to speak where he would not otherwise do so freely." *Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719.

The *Miranda* safeguards were never intended to apply to the typical, "on-the-scene" investigation which ordinarily does not create the type of coercive atmosphere that *Miranda* sought to eradicate: "Our decision is not intended to hamper the traditional function of police officers in investigating crime.... General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." *Miranda*, 384 U.S. at 477, 86 S.Ct. at 1629, 16 L.Ed.2d at 725.

Two of the four suspects involved in the *Miranda* decision were forcibly taken to the station house and subjected to protracted questioning. Since that decision, the court has had numerous occasions to consider when a suspect is custodially detained, beyond those classic examples of incommunicado police-dominated interrogation. *See supra* note 15. In doing so, the court has subsequently defined the phrase, "or otherwise deprived of his freedom of action in any significant way," as occurring when "a suspect's freedom of action is curtailed to a 'degree associated with [a] formal arrest.' *California v. Beheler*, 463 U.S. 1121, 1125 [, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279] (1983) (*per curiam*)." *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 335

(1984). *Accord, Oregon v. Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719.

Recently, the court addressed the issue in terms of routine traffic investigations in *Berkemer v. McCarty*. A highway patrolman followed a person who was driving erratically for two miles, then "forced" the driver to stop. *Berkemer*, 468 U.S. at 423, 104 S.Ct. at 3141, 82 L.Ed.2d at 324. When the accused exited the car, he exhibited signs of intoxication. The patrolman immediately decided to arrest the driver but did not tell him. Instead, without *Miranda* warnings, the patrolman asked the accused to perform a field sobriety test. When the accused failed the test, the patrolman, again, without *Miranda* warnings, asked the accused whether he had been using intoxicants, to which the accused affirmatively responded. The accused was then placed under arrest for a misdemeanor offense and removed to the station house for medical tests. The driver was still not provided his *Miranda* rights and made similar admissions to those on the highway.

Prior to trial, the driver moved to suppress the incriminating statements he made on the highway, prior to formal arrest, and at the station house, subsequent to formal arrest, because he was not provided *Miranda* warnings. The record consisted of the highway patrolman's arrest report and stipulations by the parties. *McCarty v. Herdman*, 716 F.2d 361, 362 (6th Cir.1983). During the state court proceeding, the statements were held admissible. The driv-

706 n. 4, "the focus" was shifted to the suspect. Subsequent cases explicitly indicate that, in determining when a suspect is entitled to *Miranda* warnings, the sole inquiry is whether the accused was in custody, not whether the police had probable cause to arrest. *Berkemer v. McCarty*, 468 U.S. 420, 435 n. 22, 104 S.Ct. 3138, 3148 n. 22, 82 L.Ed.2d 317, 331 n. 22 (1984); *California v. Beheler*, 463 U.S. 1121, 1124 n. 2, 103 S.Ct. 3517, 3519 n. 2, 77 L.Ed.2d 1275, 1279 n. 2 (1983); *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977); *Beckwith v. United States*, 425 U.S. 341, 347, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1, 8 (1976); *Schneckloth v. Bustamonte*, 412 U.S. 218, 240, 93 S.Ct. 2041, 2054, 36 L.Ed.2d 854, 870 (1973); *Orozco v. Texas*, 394 U.S. 324, 327, 89 S.Ct. 1095, 1097, 22 L.Ed.2d 311, 315 (1969); *Hoffa v. United States*, 385 U.S. 293, 304, 87 S.Ct. 408, 414–15, 17 L.Ed.2d 374, 383 (1966).

*Berkemer* was applied without discussion in *State v. Holland*, 178 W.Va. 744, 747, 364 S.E.2d 535, 538 (1987). *Cf. State v. Hamrick*, 160 W.Va. 673, 677, 236 S.E.2d 247, 249 (1977) ("They were ... undoubtedly suspects when he *asked them* the next day to come to the police barracks. Their *Miranda* rights should have been given. *Escobedo v. Illinois*[.]" (emphasis added)). Recently, in *State v. Muegge*, 178 W.Va. 439, 443, 360 S.E.2d 216, 220 (1987), we noted that "[t]his Court has adopted the reasoning of *Miranda* and has gone on to expand its protections. *See, e.g., State v. Hamrick*, 169 W.Va. 673, 236 S.E.2d 247 (1977)." *Cf. State v. Holland*, 178 W.Va. 744, 364 S.E.2d 535 (1987), at the beginning of this paragraph.

er pleaded guilty and preserved the error for appeal under a state rule of criminal procedure. The state court of appeals affirmed the trial court and the state supreme court summarily dismissed the appeal.

On a petition for habeas corpus, a panel of the United States Court of Appeals for the Sixth Circuit reversed a district court's summary denial of relief and held that *Miranda* warnings are required prior to custodial interrogation of a suspect, regardless of the nature or gravity of the offense that the suspect is believed to have committed. However, relying upon the "on-the-scene" investigation language of *Miranda* and a similar interpretation by the Fourth Circuit in *Clay v. Riddle*, 541 F.2d 456 (4th Cir. 1976), the court concluded that the officer was not required to provide *Miranda* warnings while he detained the motorist on the highway because the traffic stop did not escalate into a custodial atmosphere. Therefore, the driver's statements on the highway were admissible. However, once the driver was formally arrested, the officer was required to provide him his *Miranda* rights as the driver was clearly "in custody." Therefore, the writ was granted.[16]

The Supreme Court of the United States affirmed the Sixth Circuit's decision, on similar reasoning; however, it took the opportunity to clarify the standard for determining when a person who has not been formally arrested is "in custody" for the purposes of *Miranda*, as well as the manner in which a court should evaluate the various factors.

The court agreed with the Sixth Circuit and held that *Miranda* warnings are required whenever a person has been formally arrested or custodially interrogated, regardless of the nature or severity of the offense.

Because the safeguards prescribed by "*Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with [a] formal arrest,'" *Berkemer*, 468 U.S. at 440, 104 S.Ct. at 3150, 82 L.Ed.2d at 335, *quoting California v. Beheler*, the court then gave a detailed evaluation of the facts surrounding the incident to determine if the driver was entitled to *Miranda* warnings at any time prior to formal arrest.

In doing so, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151, 82 L.Ed.2d at 336.[17]

The court considered several factors: the brief questioning occurred on a public road; there was an absence of evidence that the lone officer, during the spontaneous stop, calculated or manipulated the driver to provide incriminating information; and although a person is frightened or nervous when detained pursuant to a traffic investigation, it is not equivalent to the fear described in *Miranda*, which compels one to incriminate himself,[18] because there is no

---

**16.** In determining whether the highway detention had ever escalated into a custodial atmosphere, the court refused to apply its prior test (stipulated by the parties) for custody, which focused upon the officer and when probable cause to arrest exists. Instead, the Sixth Circuit focused upon the driver and whether a reasonable person in his position would feel that he was "in custody." *McCarty v. Herdman*, 716 F.2d at 362 n. 1. Under the test applied, however, the Sixth Circuit did not address the effect of the patrolman forcing the driver to pull over to the side of the road on a reasonable person's perception of custody. Instead, it simply stated that "mere stopping" does not trigger *Miranda*. *McCarty v. Herdman*, 716 F.2d at 364.

**17.** This test for determining the point when a suspect is "in custody" for purposes of *Miranda* is identical to the test the court now applies to

*Terry* stops in determining whether an unreasonable seizure, prohibited by the fourth amendment, has occurred. *See Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). For a discussion of the changing fourth amendment analysis in regard to *Terry* stops, see 3 W. LaFave, *Search and Seizure* § 9.2(h) (2d ed. 1987 and Supp. 1989).

**18.** This reasoning is consistent with *Miranda*, where the suspect was placed "in such an emotional state as to impair his capacity for rational judgment ... [which] caused the [suspect] to speak." 384 U.S. at 465, 86 S.Ct. at 1623, 16 L.Ed.2d at 718. *See also Beckwith v. United*

assurance that the detained motorist will be cited, let alone criminally charged; [19] and, most significantly, although the police

*States*, 425 U.S. 341, 347, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1, 8 (1976):

> An interview with Government agents in a situation such as the one shown by this record simply does not present the elements which the *Miranda* court found so inherently coercive as to require its holding. Although the 'focus' of an investigation may indeed have been on Beckwith at the time of the interview in the sense that it was his tax liability which was under scrutiny, he hardly found himself in the custodial situation described by the *Miranda* Court as the basis for its holding.

19. *Compare Berkemer*, 468 U.S. at 437 n. 26, 104 S.Ct. at 3149 n. 26, 82 L.Ed.2d at 333 n. 26: "[S]tate laws governing when a motorist detained pursuant to a traffic stop may or must be issued a citation instead of taken into custody vary significantly, ... [N]o State requires that a detained motorist be arrested unless he is accused of a specified serious crime" *with Mathis v. United States*, 391 U.S. 1, 4, 88 S.Ct. 1503, 1504–05, 20 L.Ed.2d 381, 384 (1968):

> The Government here seeks to escape the application of the *Miranda* warnings [because] ... these questions were asked as a part of a routine tax investigation where no criminal proceedings might even be brought, ... These differences are too minor and shadowy to justify a departure from the well-considered conclusions of *Miranda*....
>
> ... [T]ax investigations frequently lead to criminal prosecutions[.]

20. In *Berkemer*, the court was addressing a traffic *stop*, i.e., an officer of the Ohio State Highway Patrol "forced [the driver] to stop[.]" *Berkemer v. McCarty*, 468 U.S. at 423, 104 S.Ct. at 3141, 82 L.Ed.2d at 324.

Since that decision, state courts have been applying *Berkemer* to factual situations identical to the case before us today, where a police officer *responds* to a report of an accident and suspects one of the drivers was operating a vehicle while intoxicated. In doing so, the courts have acknowledged that a police officer's *response* to a report of an accident is distinct from a police officer's *stopping* a vehicle. They nonetheless apply *Berkemer* without discussion or merely state that the distinction is *de minimis*, and conclude that a police officer who *responds* to an accident report may ask the suspected intoxicated driver some questions regarding the accident even when the driver has been removed to a hospital for medical treatment. *Nagem v. City of Phenix City*, 488 So.2d 1379, 1383–84 (Ala.Crim.App.1986); *Snyder v. State*, 15 Ark.App. 277, 278, 692 S.W.2d 273, 274 (1985); *People v. Milhollin*, 751 P.2d 43, 49–53 (Colo.1988); *Steinberg v. State Department of Public Safety*, 357 N.W.2d 413, 415–16 (Minn.Ct. App.1984); *State v. Nemesh*, 228 N.J.Super. 597,

officer physically restrained the motorist when he "forced" him to stop, the detention was limited and not threatening.[20]

606–07, 550 A.2d 757, 762 (App.Div.1988); *People v. Bennett*, 70 N.Y.2d 891, 893–94, 519 N.E.2d 289, 291, 524 N.Y.S.2d 378, 380 (1987); *State v. Pitman*, 427 N.W.2d 337, 340–42 (N.D. 1988); *State v. Smith*, 70 Or.App. 675, 678, 691 P.2d 484, 487 (1984), *aff'd on state constitutional grounds*, 301 Or. 681, 725 P.2d 894 (1986); *Commonwealth v. Toanone*, 381 Pa.Super. 336, 338–341–43, 553 A.2d 998, 1001–03 (1989); *State v. Snapp*, 696 S.W.2d 370, 370–71 (Tenn.Crim.App. 1985); *State v. Holland*, 178 W.Va. 744, 747, 364 S.E.2d 535, 538 (1987). *But see* Lohr, J., dissenting in *Milhollin*, 751 P.2d at 55 n. 5, noting a distinction exists between a police officer's *stopping* an automobile and a police officer's *responding* to a report of a traffic accident. Justice Lohr refused to apply *Berkemer* due to the factual distinction, but never articulated the significance of the distinction.

The distinction between a response to a report of an accident and a traffic stop are not *de minimis*. A traffic stop is clearly a police-imposed physical restraint. A police-imposed physical restraint has traditionally been the single most indicative factor in determining whether a reasonable person would consider himself "in custody." See cases collected in *Cummings v. State*, 27 Md.App. 361, 374, 341 A.2d 294, 303 (1975), and annotation, *What Constitutes "Custodial Interrogation" Within Rule of Miranda v. Arizona Requiring that Suspect Be Informed of His Federal Constitutional Rights Before Custodial Interrogation*, 31 A.L.R.3d 565 (1970). *But see* cases collected in 3 W. LaFave, *Search and Seizure* § 9.2(h), at 409 n. 230 (2d ed. 1987) (holding that questioning of a motorist *without* a stop is not a seizure for purposes of fourth amendment).

The court acknowledged in *Berkemer* that it had previously held, in *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979), that a traffic stop is a seizure subject to the limitations contained in the fourth amendment. *Berkemer*, 468 U.S. at 436–37, 104 S.Ct. at 3148, 82 L.Ed.2d at 332–33. Nonetheless, for purposes of *Miranda* only, the court concluded that the detention of the automobile, although a restraint, was not tantamount to a restraint akin to formal arrest; but, rather, a brief, noncoercive investigatory detention based upon reasonable suspicion, as articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Berkemer*, 468 U.S. at 439–40, 104 S.Ct. at 3150, 82 L.Ed.2d at 334–35.

Therefore, while *Berkemer* involves a traffic *stop*, it is, nonetheless, applicable to all traffic investigations that may subsequently lead to a criminal prosecution. The fact that *Berkemer* involved a physical stop merely exhibits the court's assessment of the stop as part of the several factors to be considered in determining

The court acknowledged that, for purposes of entitlement to *Miranda* warnings, "the police and lower courts will continue occasionally to have difficulty deciding exactly when a suspect has been taken into custody[,]" when the suspect has not been formally arrested or physically removed to the station house.[21] However, the use of these nonexclusive factors should be employed in determining whether the traffic investigation is elevated to an accusatory, custodial environment. For practical purposes, the court noted that unreasonably lengthy, intimidating questioning may be the strongest indication that *Miranda* warnings are required for protecting the suspect's fifth amendment rights, and that such a situation may also implicate other constitutional or procedural protections. *Berkemer*, 468 U.S. at 440, 104 S.Ct. at 3150, 82 L.Ed.2d at 335. *See also Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); *State v. Wilson*, 170 W.Va. 443, 294 S.E.2d 296 (1982).

■ After reviewing *Berkemer*, and the other authorities, we hold that *Miranda* warnings are required whenever a suspect has been formally arrested or subjected to custodial interrogation, regardless of the nature or severity of the offense. When ruling upon a motion to suppress a statement made by a suspect pursuant to a traffic investigation due to the investigating officer's failure to provide *Miranda* warnings, the trial court must determine whether the statement was the result of custodial interrogation.

■ The sole issue before a trial court in determining whether a traffic investigation has escalated into an accusatory, custodial environment, requiring *Miranda* warnings, is whether a reasonable person in the suspect's position would have considered his or

---

whether the reasonable person would consider himself "in custody." Indeed, prior to *Berkemer*, a great number of those jurisdictions that used the "reasonable person's perception of custody" test for determining the applicability of *Miranda*, had already concluded that a police officer who *responds* to a report of a traffic accident may ask minimal questions of a suspected intoxicated driver, even when the driver was removed to a hospital. In doing so, the courts relied extensively upon the "on-the-scene" investigation language contained in *Miranda* and concluded that the investigation, absent additional evidence of restraint, did not escalate into the custodial atmosphere envisioned by the *Miranda* court. *Cummings v. State*, 27 Md.App. 361, 341 A.2d 294 (1975), and authorities cited therein; *see also Williamson v. State*, 171 Ga. App. 904, 321 S.E.2d 762 (1984); *People v. Kenning*, 110 Ill.App.3d 679, 66 Ill.Dec. 424, 442 N.E.2d 1337 (1982); *State v. Lapp*, 202 Mont. 327, 658 P.2d 400 (1983); *State v. Gwaltney*, 31 N.C.App. 240, 228 S.E.2d 764, *cert. denied*, 291 N.C. 449, 230 S.E.2d 767 (1976).

Courts were divided, however, when the questioning resulted from a traffic stop because it implicated a key factor in determining whether a reasonable person would consider himself in custody: police-imposed physical restraint. *See Lowe v. United States*, 407 F.2d 1391, 1394 & n. 2 (9th Cir.1969) (finding admissible, as on-the-scene investigation) (collecting cases). *See generally* annotation, *Right of Motorist Stopped by Police Officers for Traffic Offense to Be Informed at That Time of His Federal Constitutional Rights Under Miranda v. Arizona*, 25 A.L.R.3d 1076 (1969 and Supp.1988).

21. *Berkemer*, 468 U.S. at 441, 104 S.Ct. at 3151, 82 L.Ed.2d at 335. *But see Commonwealth v. Bruder*, 365 Pa.Super. 106, 528 A.2d 1385 (1987), where the superior court ruled that a trial court abused its discretion when it admitted into evidence the appellant's response to questions (nearly identical to those before us today), without prior *Miranda* warnings. The Pennsylvania test for custody focuses upon the suspect in a manner nearly identical to *Berkemer*. The superior court, nonetheless, relying upon the above quoted language in *Berkemer* concerning the discretion vested in the courts for determining custody, concluded that "the policeman's questions were intended to elicit incriminating statements[.]" *Bruder*, 365 Pa.Super. at 109, 528 A.2d at 1388. The Pennsylvania Supreme Court denied certiorari. The United States Supreme Court reversed the decision as inconsistent with *Berkemer*. *Pennsylvania v. Bruder*, 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988). *See also Commonwealth v. Toanone*, 381 Pa.Super 336, 553 A.2d 998 (1989); *State v. Roberti*, 293 Or. 59, 644 P.2d 1104, *rev'd on reh'g*, 293 Or. 236, 646 P.2d 1341 (1982), wherein the state supreme court, on facts very similar to the case before us, used probable cause analysis to determine the application of *Miranda* and affirmed the appeals court's decision to set aside a trial court's ruling admitting the statements. The Supreme Court of the United States vacated the decision as not in accordance with *Berkemer*. *Oregon v. Roberti*, 468 U.S. 1205, 104 S.Ct. 3574, 82 L.Ed.2d 873 (1984). The still divided state supreme court on remand reversed the appellate court in *State v. Roberti*, 298 Or. 412, 693 P.2d 27 (1984).

her freedom of action curtailed to a degree associated with a formal arrest.

The factors to be considered by the trial court in making such a determination, while not all-inclusive, include: the location and length of questioning; the nature of the questioning as it relates to the suspected offense; the number of police officers present; the use or absence of force or physical restraint by the police officers; the suspect's verbal and nonverbal responses to the police officers; and the length of time between the questioning and formal arrest.

In this case the trial court ruled that the appellant's affirmative response to the deputy's initial question, as to whether the appellant was driving the white sedan, was admissible because, among other reasons, the deputy asked the initial question as part of an "on-the-scene" investigation.

■ The standard of appellate review in such matters is contained in syllabus point 3 of *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978): "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence."

■ The trial court's decision to admit the response is supported by the evidence contained in the record. The record does not precisely state the length of the period of the questioning, but it was apparently brief and conducted in front of only two officers. Further, the record also indicates that there were persons other than the sheriff and the deputy in the vicinity when the questioning occurred. The appellant was restrained, while in the stretcher; however, the restraint was not imposed by the officers. See cases collected at 31 A.L.R.3d 565, § 9.

Finally, during the twenty-minute period between the deputy's arrival and the time at which the question was posed, the deputy was routinely investigating the accident site. Although the deputy waited until the accused was removed from the vehicle and placed in the ambulance, the evidence suggests the delay was necessary and in no way suggests that the time was used to develop a plan of subterfuge to elicit a confession. *Berkemer*, 468 U.S. at 438 n. 27, 104 S.Ct. at 3149 n. 27, 82 L.Ed.2d at 333 n. 27; *see also* 31 A.L.R.3d 565, §§ 9 and 10; *People v. Milhollin*, 751 P.2d 43 (Colo.1988), and authorities cited therein.[22]

The court concluded that the cumulative actions of the arresting officer did not create a custodial atmosphere and that, therefore, *Miranda* warnings were not required until the accused was formally arrested.

Based upon the foregoing, the trial court did not abuse its discretion when it admitted the appellant's affirmative response to

**22.** *Milhollin* involved a defendant convicted of felonious vehicular assault, while intoxicated. A police officer investigated a traffic accident, where witnesses informed him that two people on a motorcycle travelling 100 miles per hour hit an automobile. The officer went to the hospital where the two occupants of the motorcycle were taken. He approached the defendant, who was awaiting surgery for his leg, and smelled alcohol on his breath. The officer asked the defendant if he was the driver of the motorcycle. The defendant responded affirmatively.

The trial court suppressed the affirmative response.

In reversing, as not supported by the evidence, the trial court's finding of fact that the defendant was in custody and therefore entitled to *Miranda* warnings prior to asking the appellant whether he was the driver of the motorcycle, the court concluded:

In the case before us, the trooper testified that he did not know which of the 'two occupants of the motorcycle' was the driver, and which was the passenger, until speaking to them at the hospital. Because he could not complete a traffic investigation without knowing who was the driver, this was the type of general question which could have been properly asked at the accident scene as part of the '[g]eneral on-the-scene questioning as to facts' surrounding the accident. A statement in this context does not become violative of the fifth amendment simply because the question was asked at the hospital rather than at the scene of the accident. There is simply no evidence in the record to support the conclusion that the defendant, at the time he was asked whether he was the driver of the car, reasonably believed that his freedom of action had been curtailed by the officer to a degree associated with a formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 441–42, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 [, 335–36] (1984).

*Milhollin*, 751 P.2d at 52.

the police officer's question as to whether he was the driver of the white sedan, for there is evidence in the record supporting the finding that the officer asked the question as part of an "on-the-scene" investigation, and the evidence also established that a reasonable person in the appellant's position would not have considered his or her freedom of action curtailed to a degree associated with a formal arrest.

Affirmed.