# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 17-0951** (Cabell County 15-F-337)

**Ronald Steven Carson Jr.,**
**Defendant Below, Petitioner**

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Ronald Steven Carson Jr., by counsel A. Courtenay Craig, appeals the Circuit Court of Cabell County's September 26, 2017, order sentencing him following his convictions of driving under the influence causing the death of another person and negligent homicide. The State of West Virginia, by counsel Zachary Aaron Viglianco and Gordon L. Mowen II, filed a response in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in failing to offer a jury instruction on missing or lost evidence, failing to suppress his statement, and denying his right to a speedy trial.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On the evening of April 5, 2015, Kevin Perry was driving on Route 2 in Cabell County, West Virginia. Mr. Perry noticed a single headlight behind him, which he ascertained was from a motorcycle. Because Mr. Perry often rode motorcycles himself and was aware of the potential visibility hazards, he was particularly attuned to the motorcyclist's location. As he was traveling along Route 2, Mr. Perry noticed headlights to his right coming from a driveway located perpendicular to Route 2. Mr. Perry was concerned for a moment that the car coming from the driveway was going to enter Route 2 right in front of him, but the car did stop at the end of the driveway, and Mr. Perry continued past it. As Mr. Perry checked on the motorcyclist from his rearview mirror, he saw the headlight disappear and heard a loud screech and impact. Mr. Perry immediately turned his car around and proceeded back to the accident.

At the scene of the accident, Mr. Perry discovered the driver of the motorcycle, Justin Parsons, underneath the car that had turned out of the driveway, which was driven by petitioner. Mr. Perry instructed petitioner to turn his car off and exit it. Mr. Perry described petitioner's response as slow and lethargic. Mr. Perry also attempted to locate a pulse on Mr. Parsons, but could not find one. Ultimately, Mr. Parsons died at the scene.

1

The first officer to arrive on the scene, Justin Cochran, similarly characterized petitioner's behavior at the scene as "unusual" given petitioner's "slightly delayed" reaction to questions and "really calm" demeanor. Deputy Cochran administered a breathalyzer, which revealed that petitioner was not under the influence of alcohol. Another investigating officer, Michael Talbott, arrived at the scene shortly after Deputy Cochran, and described petitioner as "withdrawn and slow." Petitioner's "very calm" demeanor struck Deputy Talbott as odd given the gravity of the situation, so he asked petitioner whether he had consumed any alcohol. Petitioner responded that he had not had any alcohol, "but that he had taken his medication," which was reported to be three half-milligram tablets of Xanax. Petitioner was later arrested.[1]

During the crash, the motorcycle's headlight became detached from the handlebars, but remained attached to the bike by wires. At the scene following the crash, due to petitioner's statement that he did not see the bike's headlight before pulling out onto Route 2, the wires were cut and the headlight was taken into evidence.

Petitioner was indicted on August 12, 2015, on one count of driving under the influence causing the death of another person and one count of negligent homicide. Various pretrial motions were argued and proceedings held, and petitioner's trial eventually began on August 28, 2017. After a two-day trial, the jury found petitioner guilty of both crimes charged. On September 26, 2017, the circuit court sentenced petitioner to not less than two nor more than ten years of incarceration for his conviction of driving under the influence causing the death of another, but because the court found that the negligent homicide conviction "may be a lesser included" offense of driving under the influence causing the death of another, it did not impose a sentence for the negligent homicide conviction. It is from this order that petitioner appeals.

Petitioner first assigns as error the circuit court's failure to instruct the jury in accord with *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504 (1995). Petitioner claims that the State should have preserved the entire motorcycle – not just the headlight – because the headlight alone was insufficient to determine whether a malfunction in the light was "caused by anything from the battery connections to the wiring to the lamp itself. The lamp alone would not register answers to the other possible malfunctions." Petitioner asserts that in his initial conversations following the accident, he maintained that he did not see the headlight on the motorcycle, thereby alerting the State to the "importance of the evidence." Petitioner further claims that the failure to preserve the entire bike deprived him of the ability to prove his defense that the motorcycle's light had malfunctioned and was not on at the time of the collision.

---

[1]After his admission to consuming Xanax, but prior to his arrest, petitioner was placed in the back of a police cruiser for approximately forty-five minutes and, later, instructed to undergo additional tests, including field sobriety tests. The circuit court granted petitioner's motion to suppress evidence obtained following his placement in the cruiser, finding that this placement amounted to a de facto arrest.

We review the refusal to give a requested jury instruction under an abuse of discretion standard. Syl. Pt. 1, in part, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996). "When assessing whether the trial court properly exercised that discretion, a reviewing court must examine the instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence." *Id.* at 285, 489 S.E.2d at 262 (citations omitted). Where an instruction is requested but refused, reversible error occurs only if

> (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

Syl. Pt. 11, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994). But, to be entitled to an instruction on the theory of his or her defense, there must be "a basis in evidence for the instruction" and the instruction must have "support in law." *Hinkle*, 200 W.Va. at 285, 489 S.E.2d at 262.

In *Osakalumi*, we held that

> [w]hen the State had or should have had evidence requested by a criminal defendant but the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either *West Virginia Rule of Criminal Procedure* 16 or case law; (2) whether the State had a duty to preserve the material; and (3) if the State did have a duty to preserve the material, whether the duty was breached and what consequences should flow from the breach. In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction.

*Id.* at 759, 461 S.E.2d at 505, Syl. Pt. 2. We further noted that one such consequence could be an instruction to the jury that, where the State "allowed to be destroyed or lost any evidence whose content or quality are in issue, you may infer that the true fact is against the State's interest." *Id.*, n.14 (citing *Arizona v. Youngblood*, 488 U.S. 51, 59-60 (1988)).

We find no abuse of discretion in the circuit court's refusal to give an instruction akin to that cited in *Osakalumi*. To start, petitioner fails to direct this Court to any request made for the

3

motorcycle in issue.[2] Without a request for the evidence, a trial court need not determine whether the material was subject to disclosure, whether the State had a duty to preserve it, or, if such duty existed, whether it was breached and, if so, the consequences, including the requested instruction, that should flow from that breach. *See id.* at 759, 461 S.E.2d at 505, Syl. Pt. 2 ("When the State had or should have had evidence *requested by a criminal defendant . . . .*") (emphasis added). Nevertheless, the circuit court undertook this analysis, and we find no error in the conclusions reached.

The circuit court first reasoned that there was no duty to preserve the body of the motorcycle where the issue all along had been the headlight. The court stated, "the headlight was available, has been available the whole time, and that still seems to be the evidence here." Mr. Perry informed the investigating officers immediately after the accident that Mr. Parsons's headlight was on, and the only indication at that time that the headlight would be an issue was petitioner's self-serving statement about not seeing the headlight. The headlight was, therefore, preserved and remained available throughout the proceedings below. As the circuit court noted, the State "preserved what [it] thought was the issue that the [petitioner] complained about."

Despite finding no duty to preserve the body of the motorcycle, the circuit court gave petitioner the benefit of further analysis. The court continued that, even if one assumes the State had a duty to preserve the entire motorcycle, the State did not act in bad faith in breaching that duty because, as set forth above, it preserved the item with which petitioner took issue at the scene. Therefore, the court found that instructing the jury "[t]hat it should be presumed that the evidence was adverse to the State and they were trying to make sure people didn't have it" did not fit within the "spirit of [the *Osakalumi*] case."

In *State v. Morris*, we found no abuse of discretion in the circuit court's conclusion that the State had no duty to preserve a vehicle involved in a fatal accident where, at the time of the crash, there were injuries but not yet a fatality. 227 W.Va. 76, 83, 705 S.E.2d 583, 590 (2010). The circuit court in *Morris* stated that "[p]olice routinely, routinely investigate accidents and if they were to take all the cars into some sort of custody then they would have a large inventory of smashed up vehicles indeed." *Id.* Given the facts presented in the instant case, we likewise find no abuse of discretion in the circuit court's conclusion that the State did not have a duty to preserve the body of the motorcycle or in the court's conclusion that, assuming a duty to preserve the motorcycle existed, an *Osakalumi* instruction would not be appropriate. In sum, there was no basis in law for an *Osakalumi* instruction. *Hinkle*, 200 W.Va. at 285, 489 S.E.2d at 262.

Petitioner's second assignment of error concerns the circuit court's failure to suppress his statement to Deputy Talbott that he had taken his prescription medication. Petitioner argues that

---

[2]The State's review of the record revealed no request. Further, the State supplemented the appendix to include petitioner's "Omnibus Discovery Request," which likewise included no request for the motorcycle.

4

the statement should have been suppressed because he was in custody but not given his *Miranda* warnings.[3] Petitioner claims that the environment surrounding the accident was coercive and amounted to a de facto arrest once his driver's license and vehicle registration were held for longer than necessary to issue a ticket or warning. Further, petitioner notes that Deputy Cochran stated at the suppression hearing that petitioner was not free to leave from the moment he began his investigation.

In reviewing a ruling on a motion to suppress, we apply the following standard of review: "On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. Pt. 3, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994). Further,

> an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, in part, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

With respect to the circumstances necessitating *Miranda* warnings, it is well-settled that "[t]wo elements must be present before *Miranda* warnings are required: first, the person must be in custody, and, second, he or she must be interrogated." *State v. Farley*, 238 W.Va. 596, 607, 797 S.E.2d 573, 584 (2017) (citing *State v. Honaker*, 193 W.Va. 51, 60, 454 S.E.2d 96, 105 (1994)). "Custodial interrogation" occurs when law enforcement initiates questioning "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). We look to "whether a reasonable person in the suspect's position would have considered his or her freedom of action curtailed to a degree associated with a formal arrest." *Id.* at 601, 797 S.E.2d at 578, Syl. Pt. 3, in part (citation omitted). This is an objective analysis that "does not depend on the subjective view of either the person interrogated or the officers who conduct the interrogation." *Id.* at 608, 797 S.E.2d at 585 (citation omitted).

In *State v. Preece*, 181 W.Va. 633, 383 S.E.2d 815 (1989), we made clear that

> [t]he *Miranda* safeguards were never intended to apply to the typical, "on-the-scene" investigation which ordinarily does not create the type of coercive atmosphere that *Miranda* sought to eradicate: "Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . .

---

[3]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

5

General on-the-scene questioning as to facts surrounding crime or other general questioning of citizens in the fact-finding process is not affected by our holding."

*Id.* at 638, 383 S.E.2d at 820 (quoting *Miranda*, 384 U.S. at 477).

Deputy Talbott, who took the statement from petitioner, testified at the suppression hearing that he arrived at the scene at approximately 9:40 p.m., which was about eight minutes after the accident occurred. Upon arrival, Deputy Talbott spoke with Deputy Cochran to determine what was known at that point, and then approached petitioner, who was standing off the roadway close to his driveway, to ask what happened. Deputy Talbott stated that he spoke with petitioner a few times within the first ten minutes of his arrival, and that he did not know whether a crime had been committed when he approached petitioner. Petitioner recounted that he pulled out of his driveway, that he did not see a headlight or the motorcycle, and that a crash occurred. Petitioner also informed Deputy Talbott that he had not consumed any alcohol but had taken Xanax, for which he had a prescription.

We find no error in the circuit court's denial of petitioner's motion to suppress his statement regarding his Xanax consumption. Petitioner's admission concerning the Xanax occurred in the early moments of the scene investigation, and we have held that "[t]he *Miranda* safeguards were never intended to apply to . . . typical, 'on-the-scene' investigation[s]." *Preece*, 181 W.Va. at 638, 383 S.E.2d at 820 (citation omitted).

Lastly, petitioner assigns as error the circuit court's failure to try him within three terms of court or otherwise afford a speedy trial. Petitioner states that he was arrested on April 5, 2015, indicted in August of 2015, and not tried until August 28, 2017. Petitioner concedes that he requested one continuance in December of 2015 into the January 2016 term, but that, without including that term, more than three regular terms of court passed without being tried.

> This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's "clearly erroneous" standard of review is invoked concerning the circuit court's findings of fact.

Syl. Pt. 1, *State v. Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009).

West Virginia Code § 62-3-21, the "three-term rule," provides that

> [e]very person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or

6

failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict[.]

Cabell County's terms of court are set in Rule 2.06 of the West Virginia Trial Court Rules to commence "on the first Monday in January and May, and the second Tuesday in September." Petitioner was indicted during the May 2015 term of court, and his trial commenced during the May 2017 term of court. Therefore, this Court's review entails consideration of seven terms of court.[4]

We begin our review by noting that the term in which the indictment is returned is not counted for purposes of determining whether a violation of the three-term rule has occurred:

> Under the provisions of Code, 62-3-21, as amended, the three unexcused regular terms of court that must pass before an accused can be discharged from further prosecution are regular terms occurring subsequent to the ending of the term at which the indictment was returned. The term at which the indictment was returned can not be counted as one of the three terms.

Syl. Pt. 1, *State ex rel. Spadafore v. Fox*, 155 W.Va. 674, 186 S.E.2d 833 (1972). Petitioner concedes that he requested a continuance during the September 2015 term. Thus, the May 2015 and September 2015 terms of court are excused terms of court for purposes of our calculation.

With respect to the remaining terms of court, we have held that

> [a]ny term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of Code, 62-3-21, as amended.

*Spadafore*, 155 W.Va. at 674, 186 S.E.2d at 834, Syl. Pt. 2. A formal motion for continuance need not be made. *Id.* at 679, 186 S.E.2d at 836. Rather, if a defendant "were a moving party in a proceeding which necessitated such continuance, such term should not be counted." *Id.* (citation omitted). In sum,

> [w]e do not think that the language used in the statute, 'on motion of the accused,' means that the accused party must make a formal motion in the court in which the

---

[4]The terms of court applicable to petitioner's case are as follows: petitioner was indicted during the May 2015 term of court. The September 2015 term of court commenced on September 8, 2015. The January 2016 term of court commenced on January 4, 2016. The May 2016 term of court commenced on May 2, 2016. The September 2016 term of court commenced on September 13, 2016. The January 2017 term commenced on January 2, 2017. Finally, petitioner's trial began on August 28, 2017, during the May 2017 term of court, which commenced on May 1, 2017.

indictment is pending in order to charge him with the delay in bringing him to trial. If he instigates a proceeding which forces a continuance of the case at a particular term of court, he will not be permitted to take advantage of the delay thus occasioned.

*Id.* (internal quotations and citation omitted).

Moreover, "[i]t is uniformly held in other jurisdictions that if the delay in bringing the accused to trial is attributable to the accused in any manner, the accused cannot take advantage of such delay and contend that he has been denied a speedy trial." *Id.* (citations omitted). Finally, "where a court does not have time for the disposition of motions or pleas filed by the accused and a term passes as a result thereafter, such term cannot be counted as one of the three terms under the provisions of Code, 62-3-21, as amended." *Spadafore*, 155 W.Va. at 679, 186 S.E.2d at 836 (citation omitted).

In the majority of the remaining terms for this Court's consideration, petitioner initiated proceedings that caused the delay of which he now complains. After requesting a continuance during the September 2015 term of court, petitioner stated his intention to file various motions for the circuit court's consideration.[5] In accordance with this representation, petitioner filed two motions to suppress and a motion to dismiss the indictment; however, petitioner did not file these motions until May 23, 2016 – after the January 2016 term of court had concluded and after the May 2016 term of court had commenced. Because petitioner's representations caused the delay during the January 2016 term of court, that term does not count as one of the three.

After petitioner filed his motions, the circuit court held a hearing on June 21, 2016, at which multiple witnesses testified. Petitioner requested the opportunity to submit proposed findings of fact and conclusions of law, which request the circuit court granted. Petitioner submitted his proposed findings and conclusions on July 27, 2016, and the State submitted its own findings and conclusions on August 15, 2016. As the circuit court explained,

this . . . allowed approximately [twenty-nine] days for [it] to issue a ruling on [petitioner's] motions and then commence a trial before the start of the September 2016 term[,] which began on September 13, 2016. However, [it] was called upon to meticulously review and consider the undeniably complex factual and legal issues presented by the parties' pleadings and the 241-page transcript from the June 21, 2016 hearing.

It is clear that the circuit court did not "have time for the disposition of motions or pleas filed by the accused" during the May 2016 term; accordingly, where "a term passes as a result thereafter, such term cannot be counted as one of the three terms under the provisions of Code, 62-3-21, as amended." *Id.*

---

[5]Petitioner's motion to continue the trial date also sought "to continue his case generally as may be required."

The next term for consideration is the September 2016 term, during which the circuit court informed the parties of its rulings following the June 21, 2016, hearing and instructed them to schedule a status conference. No conduct on petitioner's part appears from the record to have contributed to any delay during this term; accordingly, we count it toward the three-term limit.

During the next term – the January 2017 term – the circuit court held a status conference at which the State sought clarification of the circuit court's rulings on the motions to suppress. Petitioner failed to appear for the status conference, however, and the status conference had to be rescheduled. The parties agreed to reschedule it for June 6, 2017, which continued the case into the next term of court. Given petitioner's failure to appear at the status conference and subsequent agreement to continue the matter to the next term of court, we find that this term is not an unexcused term.

The final term for consideration – the May 2017 term – commenced on May 1, 2017. This term counts toward the three-term calculation, but petitioner was tried during this term of court. Accordingly, petitioner was tried during three terms of court, and his rights under West Virginia Code § 62-3-21 were not violated.

Finally, although petitioner's argument on appeal focuses on his right to a speedy trial under the legislative pronouncement of that standard found in West Virginia Code § 62-3-21, he also seemingly invokes his speedy trial right under the Sixth Amendment to the United States Constitution. To the extent petitioner argues that ground as well, we reiterate our holding that "[i]f a conviction is validly obtained within the time set forth in the three-term rule, *W.Va. Code* 62-3-21 [1959], then that conviction is presumptively constitutional under the speedy trial provisions of the *Constitution of the United States*, Amendment VI[.]" Syl. Pt. 3, *State v. Carrico*, 189 W.Va. 40, 427 S.E.2d 474 (1993). Accordingly, petitioner's right to a speedy trial was not violated under either the West Virginia or United States Constitution.

For the foregoing reasons, we affirm the circuit court's September 26, 2017, sentencing order.

Affirmed.

**ISSUED**: November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins

**DISQUALIFIED:**

Justice Paul T. Farrell sitting by temporary assignment

9