672 S.E.2d 271

**Mark DAMRON, Petitioner
Below, Appellant**

v.

**William HAINES, Warden, Huttonsville
Correctional Facility, Respondent
Below, Appellee.**

No. 33900.

Supreme Court of Appeals of
West Virginia.

Submitted: Oct. 8, 2008.

Decided: Nov. 26, 2008.

Concurring Opinion of Justice
Benjamin Jan. 9, 2009.

Douglas V. Reynolds, Esq., W. Harrison White, Esq., Reynolds & Associates, Huntington, for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, R. Christopher Smith, Esq., Assistant Attorney General, Charleston, for Appellee.

PER CURIAM.[1]

This case is before this Court upon appeal of a final order of the Circuit Court of Cabell County entered on June 8, 2007. In that order, the circuit court denied a petition for a post-conviction writ of habeas corpus filed by the appellant and petitioner below, Mark Damron. The appellant was convicted of one count of first degree arson and one count of second degree arson in March 2005, and was sentenced to thirty years in prison. In this appeal, the appellant contends that a statement he gave to a fire marshal was admitted into evidence at his trial in violation of his rights under the Fifth Amendment of the United States Constitution and Article III, § 5 of the West Virginia Constitution.[2] He also contends that a statement a witness gave a police officer at the scene of the fire was admitted into evidence in violation of the confrontation clause of the United States and West Virginia Constitutions.[3] Finally, the appellant asserts that he received multiple

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. The Fifth Amendment of the United States Constitution provides, in pertinent part, "[n]o person ... shall be compelled in any criminal case to be a witness against himself[.]" Article III, § 5 of the West Virginia Constitution states, "nor shall any person, in any criminal case, be compelled to be a witness against himself[.]"

3. The Sixth Amendment of the United States Constitution provides that, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" Likewise, Article III, § 14 of the West Virginia Constitution states, "In all such trials, the accused shall ... be confronted with the witness against him[.]"

punishments for the same offense in violation of the double jeopardy clause of the United States and West Virginia Constitutions.[4] Thus, he argues that the circuit court's order denying his petition for a writ of habeas corpus should be reversed.[5]

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is affirmed, in part, and reversed, in part, and this case is remanded to the circuit court for entry of an order vacating the appellant's conviction for second degree arson.

## I.

## FACTS

Early in the morning on August 9, 2003, a building located at 2421 Third Avenue, Huntington, West Virginia, was set on fire. The building contained a shoe repair shop and a nightclub on the bottom floor with apartments above. Steve Ellis, a deputy fire marshal for the Huntington Fire Department, was called to the scene of the fire to conduct a cause and origin investigation. By the time Mr. Ellis arrived, firefighters had extinguished most of the fire. Mr. Ellis began conducting his investigation with the assistance of Devin Palmer, an assistant state fire marshal. They determined that the fire had originated at the front of the shoe repair shop.

While conducting their investigation, Mr. Ellis and Mr. Palmer exited the shoe repair shop and observed a man leaving the building from another door which led to the apartments on the second floor. The man was the appellant, Mark Damron. Mr. Ellis yelled, "Hey you," but the appellant kept walking. Mr. Ellis went to the door which opened into a stairwell and found twisted pieces of newspaper on the floor in flames. He then began pursuing the appellant yelling, "Fire Marshal. Stop. Freeze!" The appellant started to go down an alley, but when Mr. Ellis yelled a second time, he finally stopped. Mr. Ellis told the appellant to keep his hands in the air and then had him get down on the ground. Mr. Palmer had joined the pursuit of the appellant and was just a couple steps behind. At this point, Mr. Ellis asked the appellant, "Man, what was you [sic] doing in that building?" The appellant responded that the firefighters had put the fire out too quickly and he was back to finish the job.

Thereafter, Steve Compton, a police officer with the Huntington Police Department, arrived on the scene. Upon observing the appellant with Mr. Ellis, Officer Compton radioed Corporal Jeff Sexton, another Huntington police officer who had been on patrol in the area and who was the first to arrive at the burning building. Officer Compton asked for the description of a suspect which Corporal Sexton had been given earlier by a witness named Mike Smith. Based on the description, Officer Compton believed he had probable cause and arrested the appellant. At that time, the appellant continued to make statements and admissions to Officer Compton. Officer Compton told him to stop talking and informed him of his *Miranda* rights.[6]

The appellant continued to make several admissions after he was *Mirandized.* The appellant told Officer Compton that "this was

---

**4.** The Fifth Amendment of the United States Constitution states, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, Article III, § 5 of the West Virginia Constitution provides that "[n]o person shall ... be twice put in jeopardy of life or liberty for the same offence."

**5.** In his petition for appeal, the appellant also claimed ineffective assistance of trial counsel and ineffective assistance of habeas counsel. However, these issues were not addressed in the appellant's brief, and, therefore, we deem them waived. *See In re Edward B.*, 210 W.Va. 621, 625 n. 2, 558 S.E.2d 620, 624 n. 2 (2001) ("Because the errors, as assigned in the Appellant's petition for appeal, were neither assigned nor argued in the Appellant's brief they are hereby waived."); *Britner v. Medical Sec. Card, Inc.*, 200 W.Va. 352, 354 n. 5, 489 S.E.2d 734, 736 n. 5 (1997) ("The defendants' petition for appeal cited as error the circuit court's application of the five year statute of limitations to this case. However, the defendants did not address that issue in their brief and therefore have abandoned that assignment of error."); Syllabus Point 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived.").

**6.** *See* note 9, *infra.*

payback" and that he had "come back to finish the job." At police headquarters, Corporal Sexton heard the appellant make numerous spontaneous statements essentially admitting to the crime. The appellant said he did not like the owner of the building and that he owed him money due to a gambling debt. After hearing these statements, Corporal Sexton gave the appellant a *Miranda* waiver form and told him that if he wanted to make a statement, he should read the warning on the form and put his statement in writing. The appellant refused to do so.

Subsequently, the appellant was charged in a seven-count indictment returned by a Cabell County grand jury on September 19, 2003. The appellant was charged with two counts of first degree arson, two counts of second degree arson, two counts of attempted first degree murder,[7] and one count of breaking and entering. Prior to trial, counsel for the appellant filed a motion to suppress the statement the appellant gave to Mr. Ellis. A hearing was held on the motion, and the court ruled that the statement was admissible. The case proceeded to trial, and on March 1, 2005, the jury found the appellant guilty of one count of first degree arson and one count of second degree arson. The appellant was acquitted on the other counts.

Following the trial, counsel for the appellant moved to set aside the verdict on one or both counts of arson arguing that the appellant could not be convicted of both charges. Counsel for the appellant also filed a motion for a new trial. Both motions were denied, and the appellant was sentenced to twenty years in prison for the first degree arson conviction and ten years in prison for the second degree arson conviction. The court ordered that the sentences be served consecutively for a total of thirty years.

The appellant filed a petition for appeal with this Court which was refused on January 11, 2006. On February 9, 2006, the appellant filed a Petition for Post–Conviction Habeas Corpus in the Circuit Court of Cabell County. The appellant was appointed counsel, and an omnibus habeas corpus hearing was held on May 21, 2007. The circuit court entered a final order on June 8, 2007, denying the appellant habeas corpus relief. This appeal followed.

## II.

### STANDARD OF REVIEW

This Court has held that, "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syllabus Point 1, *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975). This Court has also explained that,

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syllabus Point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006). With these standards in mind, we now consider the issues presented in this appeal.

## III.

### DISCUSSION

The appellant first contends that he is entitled to habeas corpus relief because the trial court improperly allowed his statement to Mr. Ellis to be admitted into evidence at trial in violation of his rights under the Fifth Amendment of the United States Constitution and Article III, § 5 of the West Virginia Constitution.[8] Specifically, the appellant contends that he was subjected to custodial interrogation by Mr. Ellis without being ad-

---

7. The attempted murder charges were based upon the fact that Mr. Ellis and Mr. Palmer were in the building at the time the appellant allegedly started the second fire.

8. *See* note 2, *supra.*

vised of his *Miranda* rights and therefore, his statement should have been suppressed.[9]

■ In *Miranda*, the United States Supreme Court explained that, "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. In *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 307 (1980), the United States Supreme Court further explained that,

> [T]he special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. "Interrogation," as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.

Accordingly, this Court has held that, "The special safeguards outlined in *Miranda* are not required where a suspect is simply taken into custody, but rather only where a suspect in custody is subjected to interrogation. To the extent that language in *State v. Preece*, 181 W.Va. 633, 383 S.E.2d 815 (1989), and its progeny, may be read to hold differently, such language is expressly overruled." Syllabus Point 8, *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83 (1999).

■ It is clear that the *Miranda* safeguards were never intended to apply to the typical "on-the-scene" investigation. In that regard, the United States Supreme Court stated in *Miranda* that,

> Our decision is not intended to hamper the traditional function of police officers in investigating crime.... General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding.

384 U.S. at 477, 86 S.Ct. at 1629, 16 L.Ed.2d at 725. Thus, the determination of whether a person was subjected to custodial interrogation for purposes of *Miranda* requires a consideration of the totality of the circumstances. To that end, this Court has set forth a list of factors which a trial court must consider in determining whether a custodial interrogation environment exists. In Syllabus Point 2 of *State v. Middleton*, 220 W.Va. 89, 640 S.E.2d 152 (2006), this Court held that,

> The factors to be considered by the trial court in making a determination of whether a custodial interrogation environment exists, while not all-inclusive, include: the location and length of questioning; the nature of the questioning as it relates to the suspected offense; the number of police officers present; the use or absence of force or physical restraint by the police officers; the suspect's verbal and nonverbal responses to the police officers; and the length of time between the questioning and formal arrest.

■ As we indicated, the list of factors set forth in *Middleton* is not all-inclusive. Other factors relevant to the determination of whether a custodial interrogation occurred include "the nature of the interrogator, the nature and condition of the suspect, the time and length of the questioning, the nature of the questioning-accusatory or investigatory, [and] the focus of the investigation at the time of questioning[.]" *Moore v. Ballone*, 488 F.Supp. 798, 805 (E.D.Va.1980). *See also Barnes v. State*, 174 P.3d 732, 737 (Wyo. 2008). When all of these factors are considered, we are unable to conclude that the appellant was subjected to custodial interrogation by Mr. Ellis.

**9.** In *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–707 (1966), the United States Supreme Court set forth the requirements for interrogating a suspect as follows:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.

The record shows the appellant was pursued by two fire marshals when he ran from a burning building. They called the police department for assistance and yelled at the appellant, "Stop, Freeze!" When the appellant finally stopped running, he was told by Mr. Ellis to keep his hands in the air. Mr. Ellis then made the appellant lie face down on the ground. He proceeded to ask the appellant what he was doing in the building.

During proceedings below, Mr. Ellis testified that as a city fire marshal he is required to carry a firearm. While the appellant testified that he believed that Mr. Ellis was pointing a gun at the back of his head, Mr. Ellis denied using his weapon. The record also indicates that after the appellant stopped running, Mr. Palmer stated that he was going to his car to get his handcuffs.[10] Mr. Palmer, as a state deputy fire marshal, had the authority to arrest the appellant.[11] However, before Mr. Palmer returned, Officer Compton arrived on the scene and actually made the arrest.

With regard to custodial status, this Court has held that such a determination is "based upon whether a reasonable person in the suspect's position would have considered his or her freedom of action curtailed to a degree associated with a formal arrest." Syllabus Point 1, in part, *Middleton*. In this case, the appellant was stopped by two fire marshals at the scene of a fire. No police officers were present although Mr. Ellis did radio the Huntington Police Department for back up. Mr. Ellis asserted authority over the appellant in the same manner as a police officer, but he actually had no authority to arrest the appellant. While Mr. Palmer did have arrest powers, he left the scene. The appellant was

actually arrested by a police officer, and at that point, he was read his *Miranda* rights.

█ Upon review of all the facts, it is arguable that a reasonable person in the appellant's position would have considered his or her freedom of action curtailed to a degree associated with a formal arrest. However, this is certainly a close case especially in light of the fact that Mr. Ellis and Mr. Palmer are not police officers. Nonetheless, even if we were to conclude that the appellant was in custody, our analysis does not end. As discussed above, *Miranda* warnings are only required when there is both custody and interrogation. Syllabus Point 4, *Guthrie, supra.*

In this case, the appellant gave an inculpatory statement in response to a single question asked by a fire marshal. The appellant was simply asked what he was doing in the building. Obviously, this cannot be characterized as an accusatory question. Furthermore, it is certainly not the type of question that is designed to elicit an incriminating response. Rather, this is a general on-the-scene question that is expected during an arson investigation. The record also shows that after the appellant responded to Mr. Ellis, he was not questioned further. When the totality of circumstances is considered, we are unable to find that the appellant was subjected to custodial interrogation as contemplated by the United States Supreme Court in *Miranda* and *Innis, supra.*

█ Furthermore, even if we were to conclude that the statement the appellant made to Mr. Ellis was the product of an improper custodial interrogation, the admission of the statement at trial was harmless error. This Court has held that, "Failure to

---

**10.** During the suppression hearing, Mr. Ellis testified that Mr. Palmer stated that he was going to get his handcuffs after they had stopped the appellant and made him get down on the ground.

**11.** W.Va.Code § 29–3–12(h) (2002) provides, in pertinent part:

The State Fire Marshal, any full-time deputy fire marshal or any full-time assistant fire marshal employed by the State Fire Marshal pursuant to section eleven [§ 29–3–11] of this article is hereby authorized and empowered and any person deputized pursuant to subsection

(j) of this section may be authorized and empowered by the State Fire Marshal:

(1) To arrest any person anywhere within the confines of the State of West Virginia, or have him or her arrested, for any violation of the arson-related offenses of article three [§§ 61–3–1 et seq.], chapter sixty-one of this code or of the explosives-related offenses of article three-e [§§ 61–3E–1 et seq.] of said chapter: Provided, That any and all persons so arrested shall be forthwith brought before the magistrate or circuit court.

observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syllabus Point 5, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975). The record shows that Corporal Sexton testified at trial that after the appellant was arrested and read his *Miranda* rights, he continued to make numerous spontaneous statements. Corporal Sexton told the jury that the appellant expressed his dislike for the owner of the building and stated that "this was payback" and that he had "come back to finish the job." [12] Essentially, the jury heard the same testimony from Corporal Sexton and Mr. Ellis with regard to statements made by the appellant. There is no question that the voluntary statements the appellant made after he was arrested and *Mirandized* were admissible evidence. Thus, absent Mr. Ellis's testimony, there was sufficient evidence to support the jury's convictions. Accordingly, we find no merit to the appellant's argument that the trial court erred by admitting into evidence the statement he made to Mr. Ellis.

■ The appellant next contends that the trial court erred by admitting into evidence Corporal Sexton's report which contained a statement made by a witness, Mike Smith, at the scene of the fire. Mr. Smith told Corporal Sexton that he had seen a person with an abrasion on his forehead who was wearing a dark hooded jacket kick the door of the building and enter the premises before the first fire started. The appellant was wearing clothing matching this description when he was arrested. Mr. Smith did not appear to testify at trial. [13] Thus, the appellant contends that the admission of Mr. Smith's statement through Corporal Sexton's report was a violation of the Confrontation Clause of the United States and West Virginia Constitutions. [14]

■ In Syllabus Point 6 of *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006), this Court held that,

Pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.

Upon review of the record, we are unable to find that the trial court committed reversible error in admitting this evidence for two reasons. First, the record indicates that this evidence was presented at trial only to show why Officer Compton believed he had probable cause to arrest the appellant. The jury was specifically instructed by the trial judge when this evidence was admitted that it could not be considered as a true identification of the appellant at the scene of the fire because Mr. Smith was not available to testify. Secondly, even if the admission of this evidence at trial was improper, it was harmless error. This evidence placed the appellant at the building prior to the first fire. However, the appellant was acquitted of all charges related to the first fire. Thus, this evidence did not contribute to the appellant's convictions. Therefore, we find no merit to this argument.

■ Finally, the appellant contends that his convictions for both first degree arson and second degree arson violated the double jeopardy clause of the United States and West Virginia Constitutions. [15] As set forth above, the State alleged that the appellant set two separate fires, hours apart, in the subject building. The appellant was charged with one count of first degree arson and one count of second degree arson for each fire for a total of four counts of arson. The State's theory was that the appellant could be charged with two counts of arson for each fire because the building contained both businesses and apartments. Thus, the State

---

**12.** The appellant did not object to this testimony.

**13.** The State attempted to subpoena Mr. Smith to testify at the appellant's trial. However, the trial occurred a year and a half after the fires, and Mr. Smith could not be located.

**14.** *See* note 3, *supra.*

**15.** *See* note 4, *supra.*

maintained that the appellant had committed first degree arson by burning the apartments and second degree arson by burning the businesses. The jury returned guilty verdicts for Counts II and IV of the indictment. The appellant was acquitted of all other charges. Count II charged the appellant with first degree arson for the second fire and Count IV charged the appellant with second degree arson for the second fire. Thus, the appellant was found guilty of both first degree arson and second degree arson for setting the second fire. He now contends that he is being punished twice for one offense in violation of the double jeopardy clause. We agree.

■ This Court has held that, "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." Syllabus Point 1, *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977). At issue in this case is the prohibition of multiple punishments for the same offense. It is well established that, "A claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment." Syllabus Point 7, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992). This Court has held that,

In ascertaining legislative intent, a court should look initially at the language of the involved statutes, and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is

that the legislature intended to create separate offenses.

Syllabus Point 8, *Gill*.

■ Our arson statutes do not explicitly indicate whether the Legislature intended, or did not intend, to permit multiple sentences for multiple offenses arising out of the same act. Accordingly, we must apply the *Blockburger* test. Pursuant to *Blockburger*, " 'Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.' *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)." Syllabus Point 4, *Gill*. Multiple punishments are only appropriate if each provision requires proof of an additional fact which the other does not. *State v. Zaccagnini*, 172 W.Va. 491, 502, 308 S.E.2d 131, 142 (1983).

■ W.Va.Code § 61–3–1 (1997) provides that, "Any person who willfully and maliciously sets fire to or burns, or who causes to be burned, or who aids, counsels, procures, persuades, incites, entices or solicits any person to burn, any dwelling, whether occupied, unoccupied or vacant, or any outbuilding, whether the property of himself or herself or of another, shall be guilty of arson in the first degree[.]" W.Va.Code § 61–3–2 (1997) states that, "Any person who willfully and maliciously sets fire to or burns, or who causes to be burned, or who aids, counsels, procures, persuades, incites, entices or solicits any person to burn, any building or structure of any class or character, whether the property of himself or herself or of another, *not included or prescribed in the preceding section [§ 61–3–1]*, shall be guilty of arson in the second degree[.]" (Emphasis added). Thus, the first and second degree arson statutes each apply to "[a]ny person who willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels procures, persuades, incites, entices or solicits any person to burn," certain property. The only difference between the two statutes is that first degree arson requires

proof that the property is a dwelling.[16] In other words, all the elements necessary to prove second degree arson are contained within the first degree arson statute with the added element that the property must be a dwelling. "[W]here only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, the offenses are deemed to be the same for double jeopardy purposes." *Thomas v. State*, 277 Md. 257, 267, 353 A.2d 240, 247 (1976). Consequently, the appellant's convictions under both statutes with regard to the second fire cannot stand based on double jeopardy proscriptions.[17]

 Upon review of the record, we find that the evidence presented at the appellant's trial supported a first degree arson conviction. In that regard, the evidence established that the building that was burned contained apartments on the second floor. This Court has held that, "A building which contains an apartment, intended for habitation, whether occupied, unoccupied or vacant, is a 'dwelling house' for purposes of *W.Va.Code*, 61–3–1, as amended." Syllabus Point 3, *State v. Mullins*, 181 W.Va. 415, 383 S.E.2d 47 (1989). *See also* note 16, *supra*. Therefore, because the evidence presented at the appellant's trial supported a conviction for first degree arson and because the appellant cannot be convicted of both first degree and second degree arson for the reasons set forth above,[18] the appellant's second degree arson conviction must be vacated.

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Cabell County entered on June 8, 2007, is affirmed, in part, and reversed, in part, and this case is remanded to the circuit court for entry of an order vacating the appellant's conviction for second degree arson.

Affirmed, in part, Reversed, in part, and Remanded.

Justice BENJAMIN concurs and reserves the right to file a concurring opinion.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.

BENJAMIN, Justice, concurring.

(Filed Jan. 9, 2009)

I concur because I believe that the issue of custodial interrogation was ultimately resolved correctly by the majority, although the issue was not as clear cut as the majority perceives. The fact that the Appellant was stopped by two fire marshals rather than police officers does not convince me that the Appellant should not have considered himself to be in custody at the time he made the incriminating statement at issue herein. It is indeed arguable that a reasonable person in the Appellant's position could believe that his freedom of action was curtailed to a degree associated with a formal arrest.

However, regardless of any concerns I may have regarding whether the Appellant considered himself to be in custody at the time the fire marshal questioned him, any doubt is still resolved against the Appellant in this case. The admission of the inculpatory statement made by the Appellant prior to being advised of his Miranda rights constitutes harmless error, to the extent that the statements later made by the Appellant after he was arrested and read his Miranda rights support the jury's verdict. Thus, even if the statement made by the Appellant to the fire

---

16. W.Va.Code § 61–3–1(b)(1) defines "dwelling" as "any building or structure intended for habitation or lodging, *in whole or in part*, regularly or occasionally, and shall include, but not be limited to, any house, apartment, hotel, dormitory, hospital, nursing home, jail, prison, mobile home, house trailer, modular home, factory-built home or self-propelled motor home[.]" (Emphasis added).

17. This Court has previously acknowledged that third degree arson is a lesser included offense of first degree arson. Syllabus Point 2, *State v. Jones*, 174 W.Va. 700, 329 S.E.2d 65 (1985).

18. Our decision today is limited to the factual circumstances before us, *i.e.*, the burning of a single building. Whether a person can be convicted of multiple counts of arson for setting a fire that burns multiple buildings is a decision we leave for another day.

marshal was the product of an improper custodial interrogation, the majority's decision should remain the same. Accordingly, I concur.