# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**June 24, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)  No. 12-0438** (Cabell County 10-F-253)

**Jesse Aaron Blevins,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Jesse Aaron Blevins, by counsel A. Courtenay Craig and John A. Proctor, appeals the Circuit Court of Cabell County's sentencing order entered on March 21, 2012, after he was found guilty of one count of voluntary manslaughter and one count of concealment of a dead body. Respondent State of West Virginia, by counsel Benjamin Yancey III, has filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 27, 2009, petitioner, his ex-girlfriend Elizabeth Cotton, and their minor child attended a party at the home of David Frye. Later that evening, Frye returned all three to petitioner's father's home, where petitioner was staying. After putting their son to bed, petitioner and Cotton began to argue over his alleged infidelity.[1] He later claimed she attacked him with her fists and he struck back. He then claimed she grabbed a knife from her purse and attempted to stab him. Petitioner states that he retreated to the bathroom but Cotton followed him, so he pulled a knife from his pocket and stabbed Cotton in the neck, killing her. Petitioner then cleaned up the crime scene, wrapped Cotton's body in trash bags and hid her body under the house. Petitioner threw the knife in the sewer, then took his son to his mother's home.

The next evening petitioner told Frye that he killed Cotton and buried her under the house. Petitioner then asked Frye to help him dispose of the body. Instead, Frye called the police and told them about petitioner's confession. Officers took Frye to identify the home where

---

[1] Petitioner claims that Cotton was a violent person, committing fourteen acts of violence in the two years before her death. Petitioner claims he was the victim in nine of those. He also claims six of the victims were police officers, and that she was arrested for pulling a knife and trying to stab a romantic rival only two weeks before her death.

1

petitioner was residing. Officers announced themselves and knocked on the door. When petitioner came to the door, he was asked by the police to exit the home. Petitioner was then questioned and Cotton's body was found under the home. As soon as petitioner indicated Cotton was dead, the questioning ceased. Petitioner claims that he was not free to leave, and was not given *Miranda* rights prior to being asked where Cotton was. Moreover, the body was found prior to a search warrant being obtained.

Petitioner was indicted on September 19, 2009, on one count of murder and one count of concealment of a deceased human body. Petitioner later filed a motion to suppress his initial statements to the police, and the motion was denied. The prosecutor's office filed a "nolle prosequi" motion which was granted on August 10, 2010. Petitioner was re-indicted on both counts and all previous motions and rulings were transferred to the new case.

On October 21, 2011, a Rule 404(b) hearing was held on the State's four notices regarding its intent to introduce 404(b) evidence. This evidence included numerous acts of violence by petitioner against Cotton from October of 2007 through November of 2008; an injury inflicted by petitioner upon Cotton on April 26, 2008; a specific altercation wherein petitioner punched holes in Cotton's wall, urinated on her floor, spat on her, and hit her several times on December 2, 2007; an April 9, 2008, incident wherein petitioner struck Cotton, slashed her tires and broke her windshield; a verbal altercation on June 29, 2008; a February of 2009 incident wherein petitioner injured Cotton's lip and blackened her eye; a March of 2009 incident wherein petitioner threatened Cotton's life and threatened to take their son; and a May of 2009 incident wherein petitioner physically abused and raped Cotton. The court preliminarily ruled that the acts of violence and threats toward Cotton could be introduced. However, prior to the trial, most of the evidence was disallowed based on hearsay and prejudice. Trial began on January 18, 2012. Petitioner was convicted of voluntary manslaughter and concealment of a deceased human body. He was sentenced to fifteen years on the first charge, and one to five years on the second, to run consecutively.

Petitioner first argues that the circuit court erred when it failed to suppress: (a) petitioner's initial statement to the police; (b) evidence taken as a result of the illegal search of his father's residence; and, (c) his subsequent confession, all of which were said to be fruit of the poisonous tree. Petitioner argues that he was effectively under arrest when approximately fifteen police officers descended on his father's home, and that he was questioned about Cotton's whereabouts without being given proper *Miranda* warnings.

This Court has noted as follows:

"When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus point 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

2

Syl. Pt. 13, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011). Moreover,

> By employing a two-tier standard, we first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

*State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995). Upon consideration of the above standard of review, this Court finds no error in the circuit court's denial of petitioner's motion to suppress his statements, the search, and his confession. As the State notes, the Court must first determine if petitioner was subjected to a custodial interrogation, and then must determine if there were exigent circumstances for the interrogation. This Court has stated that "the determination of whether a person was subjected to custodial interrogation for purposes of *Miranda* requires a consideration of the totality of the circumstances." *Damron v. Haines*, 223 W.Va. 135, 141, 672 S.E.2d 271, 277 (2008). Moreover, "the *Miranda* safeguards were never intended to apply to the typical 'on-the-scene' investigation." *Id. Miranda* warnings "are not required where a suspect is simply taken into custody, but rather only where a suspect in custody is subjected to interrogation." Syl. Pt. 3, in part, *Damron.*

> "The factors to be considered by the trial court in making a determination of whether a custodial interrogation environment exists, while not all-inclusive, include: the location and length of questioning; the nature of the questioning as it relates to the suspected offense; the number of police officers present; the use or absence of force or physical restraint by the police officers; the suspect's verbal and nonverbal responses to the police officers; and the length of time between the questioning and formal arrest." Syllabus Point 2, *State v. Middleton*, 220 W.Va. 89, 640 S.E.2d 152 (2006).

Syl. Pt. 4, *Damron.* Additionally, "'[o]ther factors relevant to the determination of whether a custodial interrogation occurred include 'the nature of the interrogator, the nature and condition of the suspect, the time and length of the questioning, the nature of the questioning-accusatory or investigatory, [and] the focus of the investigation at the time of questioning[.]' *Moore v. Ballone*, 488 F.Supp. 798, 805 (E.D.Va.1980)." *Damron*, 223 W.Va. at 141, 672 S.E.2d at 277. At the time petitioner gave his initial statement to the police, there was an ongoing emergency based on the statement that there was a dead body under the house and that petitioner intended to throw the body into the Ohio River. Because of these exigent circumstances, petitioner was asked a few short questions concerning the whereabouts of the victim. These questions were purely investigatory rather than accusatory and were not designed to incriminate petitioner. Even if petitioner had been in custody, these questions did not amount to an interrogation.

At the time police entered petitioner's father's home after they were told that Cotton was dead, they did not know with certainty whether Cotton was dead or alive, whether her body remained there, whether petitioner was in the process of destroying evidence, or whether petitioner's son was in the house. All of these exigent circumstances permitted entry without a warrant.

> "An officer, with authority to conserve the peace, may, without a warrant, arrest any person who he, upon probable cause, believes has committed or is committing a felony, though it afterwards appears that no felony was actually perpetrated." Syllabus Point 2 *State v. Duvernoy*, 156 W.Va. 578, 195 S.E.2d 631 (1973).

Syl. Pt. 2, *State v. Drake*, 170 W.Va. 169, 291 S.E.2d 484 (1982). Moreover, "[p]robable cause to make an arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that an offense has been committed." Syl. Pt. 1, *Id.* (quoting Syl. Pt. 7, *State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46 (1980)). Additionally, when determining reasonable suspicion, "one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." Syl. Pt. 2, *State v. Legg,* 207 W.Va. 686, 536 S.E.2d 110 (2000) (quoting Syl. Pt. 2, *State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886 (1994)). Prior to petitioner's arrest, the police spoke to both Frye and petitioner to verify that Cotton was dead and that her body was underneath petitioner's father's home. This Court has explained that "[e]xigent circumstances exist where there is a compelling need for the official action and there is insufficient time to secure a warrant, police may then enter and search private premises. . . without obtaining a warrant." *State v. Kendall,* 219 W.Va. 686, 692, 639 S.E.2d 778, 784 (2006). Moreover,

> Exigent circumstances may exist in many situations: three well recognized situations are when police reasonably believe (1) their safety or the safety of others may be threatened, (2) quick action is necessary to prevent the destruction of potential evidence, or (3) immediate action is necessary to prevent the suspect from fleeing.

*Id.* Finally, this Court has explained that the reasonable suspicion "should be analyzed from the perspective of the police officers at the scene; an inquiring court should not ask what the *police* could have done but whether they had, at the time, a reasonable belief that there was a need to act without a warrant." Syl. Pt. 7, *State v. Lacy,* 196 W.Va. 104, 468 S.E.2d 719 (1996). After the officers made a protective sweep of the house and found the body, all officers were ordered out of the house and the house was secured, so that a warrant could then be obtained to make a full search. Considering all of the above, the police conducted a proper warrantless entry and search based on the emergency. Therefore, the motion to suppress was properly denied.

Petitioner next argues that the circuit court erred when it allowed the prosecution to question petitioner regarding Rule 404(b) evidence it had previously excluded when the defense did not open the door to such evidence and the error prejudiced petitioner. The State responds that the evidence was properly admitted in response to petitioner being allowed to introduce a plethora of past acts of the victim's alleged violence and, even if the evidence was improperly

4

admitted, this amounts to harmless error.

This Court has found:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syl. Pt. 2, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994). The circuit court properly considered the evidence in question under Rule 404(b) prior to trial and chose to exclude the same. However, at trial, some evidence of petitioner's alleged violence against Cotton was admitted. As the State points out, much more damaging evidence concerning petitioner's propensity for violence against Cotton was admitted with no objection, and petitioner was permitted to put on evidence of Cotton's violence against him. Therefore, we find that the admission of the evidence of which petitioner now complains is harmless error. The test for harmless error is as follows:

> "Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury." Syl. Pt. 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), cert. denied, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980).

Syl. Pt. 10, *State v. Mills,* 219 W.Va. 28, 631 S.E.2d 586 (2005). Even if the evidence complained of had not been admitted, the remaining evidence was sufficient for a conviction. This evidence consists of, among other things: petitioner's concealment of the body, his disposal

of the knife and cleaning of the crime scene, and his admission to Frye. Any prejudicial effect from this evidence was *de minimus* and did not result in an unfair trial.

Petitioner also argues that the circuit court erred when it failed to allow petitioner to introduce 911 tapes of petitioner calling the police about Cotton, clearly describing an ongoing emergency, when Cotton was heard in the background causing a disturbance. This Court has held, "'[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W.Va. 639, [643,] 301 S.E.2d 596, 599 (1983)." Syl. Pt. 1, *State v. Kaufman*, 227 W.Va. 537, 711 S.E.2d 607 (2011) (internal citations omitted). A review of the record shows that petitioner testified to the incident in the 911 tapes at great length. Moreover, at least one of the 911 tapes was played during petitioner's father's testimony. Because of other statements on the tapes, including statements of 911 dispatchers and police officers, the tapes could not be played in their entirety. Therefore, this Court finds no error in the circuit court's ruling disallowing the introduction of the 911 tapes.

Finally, petitioner argues that there was insufficient evidence to overcome his claim of self-defense and the State failed to offer an alternative theory of Cotton's death. This Court has held as follows:

> "'The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.' Syl. Pt. 1, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995)." Syl. Pt. 1, *State v. Juntilla,* 227 W.Va. 492, 711 S.E.2d 562 (2011).

Syl. Pt. 8, *State v. Stone*, 229 W.Va. 271, 728 S.E.2d 155 (2012).

> "'A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. [] Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.' Syl. Pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995)." Syl. Pt. 2, *State v. Juntilla,* 227 W.Va. 492, 711 S.E.2d 562 (2011).

Syl. Pt. 9, *Stone*. In relation to self-defense, "[o]nce there is sufficient evidence to create a

reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense." Syl. Pt. 4, *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978). Furthermore,

> "'When one without fault himself is attacked by another in such a manner or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his life, or to do him some great bodily harm, and there is reasonable grounds for believing the danger imminent, that such design will be accomplished, and the person assaulted has reasonable ground to believe, and does believe, such danger is imminent, he may act upon such appearances and without retreating, kill his assailant, if he has reasonable grounds to believe, and does believe, that such killing is necessary in order to avoid the apparent danger; and the killing under such circumstances is excusable, although it may afterwards turn out, that the appearances were false, and that there was in fact neither design to do him some serious injury nor danger, that it would be done. But of all this the jury must judge from all the evidence and circumstances of the case.' Syl. Pt. 7, *State v. Cain*, 20 W.Va. 679 (1882)." Syl. Pt. 6, *Feliciano v. 7-Eleven, Inc.*, 210 W.Va. 740, 559 S.E.2d 713 (2001).

Syl. Pt. 4, *State v. Dinger,* 218 W.Va. 225, 624 S.E.2d 572 (2005). A review of the record shows that the evidence was sufficient to support petitioner's voluntary manslaughter conviction. The evidence showed that petitioner stabbed Cotton in the neck; Cotton also suffered blunt force trauma to her head and face; and, petitioner had no knife wounds to his body, despite his claim that Cotton was attacking him. The jury heard all of the evidence and made the determination that petitioner was guilty of voluntary manslaughter and was not acting in self-defense.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II