# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 15-0404** (Mercer County 14-F-254-OA)

**Cassidy B.,**
**Defendant Below, Petitioner**

**FILED**

**May 23, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Cassidy B., by counsel Elizabeth A. French and Michael P. Cooke, appeals the Circuit Court of Mercer County's April 28, 2015, order sentencing him to consecutive terms of incarceration of one year for his conviction of involuntary manslaughter and forty years for his conviction of child abuse by parent resulting in death.[1] The State, by counsel Jonathan E. Porter, filed a response. On appeal, petitioner alleges that the circuit court erred in denying his motion to suppress statements.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At approximately 4:30 a.m. on April 5, 2014, 911 received a call regarding petitioner's infant son, E.B. According to the caller, the child was experiencing trouble breathing. It is uncontested that, on the night in question, petitioner and the child were sleeping alone in petitioner's bed. An ambulance was dispatched and transported the child to the emergency room; however, the child died shortly thereafter. Police responded to the scene, and Detective Kenny Adams of the Bluefield Police Department ultimately assumed control of the investigation. Detective Adams made contact with all of the individuals in the home, including petitioner; the child's mother, Ashely O.; and two other adult occupants, Eric A. and Frankie H. According to the record, Detective Adams asked all these individuals to go to the Bluefield Police Department to give statements about the incident.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

On April 8, 2014, Detective Adams interviewed Eric A. and Frankie H. According to these individuals, petitioner and the child were sleeping in the same bed on the night in question. Around 4:30 a.m., petitioner woke both individuals and said that the child was not breathing. After contacting 911, both individuals went to the mother's place of employment to bring her home. On April 9, 2014, Detective Adams interviewed petitioner and the mother. According to the mother, around 3 a.m., she woke to get ready for work and told petitioner she prepared a bottle for the child before she left. Petitioner confirmed this statement to Detective Adams and informed him that he fell asleep after the mother left. According to petitioner, when he woke up again the child was having trouble breathing. At this point, he confirmed the statements of Eric A. and Frankie H. During this interview, petitioner denied knowledge of what happened to the child.

On May 16, 2014, Dr. Mock, state coroner, advised Detective Adams that he ruled the child's death a homicide. Three days later, Detective Adams contacted petitioner and the mother and indicated he would like to speak with them on May 20, 2014. He also indicated that he received the child's autopsy. Neither individual appeared for the May 20, 2014, appointment. The appointment was rescheduled for May 22, 2014, but again both individuals failed to appear. However, petitioner contacted Detective Adams that day and stated both he and the mother intended to meet the detective. Ultimately, only the mother appeared, at which time Detective Adams indicated that he wanted to speak with both parents. As such, Detective Adams verified that both parents would be working the following day. On May 23, 2014, Detective Adams went to the parents' place of employment, picked them up, and transported them to the Bluefield Police station. Detective Adams interviewed both parents individually that day and neither received *Miranda* warnings.[2] During his statement, petitioner told Detective Adams that it was possible he struck the child inadvertently while experiencing a nightmare. Detective Adams ended the interview and told petitioner he would speak with him again after further investigation.

On June 6, 2014, Detective Adams called the parents to schedule another interview, though neither ultimately appeared. Detective Adams then called the mother, who agreed to go to the station. During this statement, the mother advised Detective Adams that petitioner refused to appear for another interview and was speaking with an attorney. Thereafter, Detective Adams obtained a warrant for petitioner's arrest. On June 17, 2014, officers attempted to execute the warrant at petitioner's mother's home, at which point petitioner attempted to flee from a back window and was apprehended. Petitioner was taken to the police station, advised of his *Miranda* rights, and gave a third statement to Detective Adams, wherein he claimed that he inadvertently struck the child with his elbow while sleeping.

After being indicted on charges related to the child's death, petitioner was tried in March of 2015. Ultimately, the jury found him guilty of one count of involuntary manslaughter and one count of child abuse by a parent resulting in death. He was later sentenced to a term of incarceration of one year for his conviction of involuntary manslaughter and forty years for his conviction of child abuse by a parent resulting in death. It is from the sentencing order that petitioner appeals.

---

[2]*See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

We have previously set forth the following standard of review:

> "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syl. Pt. 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

Syl. Pt. 1, *State v. Kimble*, 233 W.Va. 428, 759 S.E.2d 171 (2014). Further,

> "[o]n appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syllabus Point 3, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).

Syl. Pt. 1, *State v. Hoston*, 228 W.Va. 605, 723 S.E.2d 651 (2012). Upon our review, we find no error in the circuit court's denial of petitioner's motion to suppress his statements.

On appeal, petitioner argues that the circuit court erred in denying his motion because both his Fifth Amendment right against self-incrimination and his Sixth Amendment right to representation were violated. The Court, however, disagrees. Specifically, petitioner alleges that his second interview with Detective Adams was custodial and constituted an interrogation. In support, petitioner argues that Detective Adams admitted to using interview techniques designed to elicit incriminating remarks. He further argues that this interview was custodial because Detective Adams came to his place of employment unannounced and took him to the police station, where he was isolated from everyone other than law enforcement officers in an interview room. However, the Court notes that in ruling on his motion to suppress, the circuit court specifically found that, at the time of the second interview, "[petitioner] was not under arrest, was not handcuffed or otherwise restrained" and that "he was again advised that he was free to leave at any time" by a second officer that was present for the interview. Ultimately, the circuit court ruled that petitioner's second statement "was . . . a product of a noncustodial and voluntary interview" that "indicate[d] that it was given freely." Upon our review, we find no error in this ruling.

In discussing *Miranda* safeguards and the admissibility of defendants' statements, we have held as follows:

> "The special safeguards outlined in *Miranda* are not required where a suspect is simply taken into custody, but rather only where a suspect in custody is subjected to interrogation. To the extent that language in *State v. Preece*, 181 W.Va. 633, 383 S.E.2d 815 (1989), and its progeny, may be read to hold

differently, such language is expressly overruled." Syllabus Point 8, *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83 (1999).

Syl. Pt. 3, *Damron v. Haines*, 223 W.Va. 135, 672 S.E.2d 271 (2008). Additionally, in determining whether a situation constitutes a custodial interrogation, we set forth the following standard:

> "The factors to be considered by the trial court in making a determination of whether a custodial interrogation environment exists, while not all-inclusive, include: the location and length of questioning; the nature of the questioning as it relates to the suspected offense; the number of police officers present; the use or absence of force or physical restraint by the police officers; the suspect's verbal and nonverbal responses to the police officers; and the length of time between the questioning and formal arrest." Syllabus Point 2, *State v. Middleton*, 220 W.Va. 89, 640 S.E.2d 152 (2006).

*Id.* at 137, 672 S.E.2d at 273, Syl. Pt. 4. As outlined above, the circuit court specifically found that several of these factors mitigated in favor of a noncustodial interview, including the fact that petitioner was not restrained in any way and was free to leave. The Court concurs and notes that several other factors also support this ruling, including the fact that only two officers were present for the interrogation, it was a relatively short interview, and the extended length of time between the interview and petitioner's subsequent arrest. For these reasons, we find that petitioner's right against self-incrimination was not violated during his second interview with Detective Adams because it was noncustodial, and the circuit court did not err in denying his motion to suppress this statement.

Finally, in regard to petitioner's allegation that his Sixth Amendment right to representation was violated during his third interview, we find no error. In support, petitioner argues that the child's mother had previously told Detective Adams of petitioner's "desire to hire an attorney." According to petitioner, the mother's statement to Detective Adams caused his right to counsel to attach such that Detective Adams was forbidden from questioning him upon his arrest. However, the Court notes that, on appeal, petitioner does not address the fact that he expressly waived his right to counsel during the third interview after Detective Adams went over petitioner's *Miranda* rights. In denying petitioner's motion to suppress his third statement, the circuit court specifically found that he waived his rights, including his right to counsel, and gave a voluntary statement to police. Specifically, the circuit court found that Detective Adams advised petitioner that he had a right to counsel, at which point petitioner indicated that he had an attorney but could not recall his name initially. After petitioner later gave Detective Adams the name of an attorney, Detective Adams indicated that this attorney did not typically handle criminal matters and again advised petitioner of his right to counsel. However, petitioner chose to waive this right and voluntarily give his statement, as evidenced by a signed waiver form and the recording that shows Detective Adams addressed each right and obtained petitioner's verbal waiver of the same. Therefore, it is clear that the evidence on appeal overwhelming shows that petitioner waived his right to counsel before giving his third statement to Detective Adams. As such, we find no error in the circuit court denying petitioner's motion to suppress his third statement.

For the foregoing reasons, the circuit court's April 28, 2015, sentencing order is hereby affirmed.

Affirmed.

**ISSUED**: **May 23, 2016**

**CONCURRED IN BY**:

Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING AND WRITING SEPERATELY:**

Chief Justice Menis E. Ketchum

Ketchum, C.J., dissenting:

The second interview by Detective Adams was clearly a custodial interrogation. Petitioner was not given *Miranda* warnings.

When a police officer takes a person from their place of employment to the police station to be interviewed, the person is in custody and is entitled to be given *Miranda* warnings. Therefore, petitioner's statements obtained during the interview were not admissible evidence and the admission into evidence was prejudicial error. Therefore, I dissent.